1

2

3

4

5          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
6

7
    AMY MARIE BRAESCH,                      No. 2:14-CV-00068-JTR
8
              Plaintiff,
9                                           ORDER GRANTING DEFENDANT'S
                   v.                       MOTION  FOR SUMMARY
10                                          JUDGMENT
11
    CAROLYN W. COLVIN,
12  Commissioner of Social Security,

13
              Defendant.
14

15

16          **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

17  Nos.  14, 15.  Attorney Dana C. Madsen represents Plaintiff, and Special Assistant

18  United States Attorney Jeffrey E. Staples represents the Commissioner of Social

19  Security (Defendant).  The parties have consented to proceed before a magistrate

20  judge.  ECF No. 7.  After reviewing the administrative record and the briefs filed

21  by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment

22  and **DENIES** Plaintiff's Motion for Summary Judgment.

23                          **JURISDICTION**

24          On January 10, 2011, Plaintiff filed both a Title II application for a period of

25  disability and disability insurance benefits and a Title XVI application for

26  supplemental security income.  Tr. 15; 250.  In both applications, Plaintiff alleged

27  disability beginning April 30, 2009.  Tr. 15; 209.  Plaintiff reported that she was

28  unable to work due to chronic pain, chronic migraines, depression, and a brain

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1    aneurysm.  Tr. 220.  The claims were denied initially and on reconsideration, and

2    Plaintiff requested an administrative hearing.  Tr. 15; 99-160.

3         On November 14, 2012, Administrative Law Judge Marie Palachuk presided

4    over a hearing and heard testimony from medical experts Alan J. Coleman, M.D.

5    and Kent Layton, Ph.D., vocational expert Scott Whitmer, and Plaintiff, who was

6    represented by counsel.  Tr. 36-76.  On November 29, 2012, the ALJ issued a

7    decision finding Plaintiff not disabled.  Tr. 15-31.  The Appeals Council declined

8    review.  Tr. 1-5.  The instant matter is before this court pursuant to 42 U.S.C. §

9    405(g).

10                          **STATEMENT OF FACTS**

11        The facts have been presented in the administrative hearing transcript, the

12   ALJ's decision, and the briefs of the parties and thus, they are only briefly

13   summarized here.  At the time of the hearing, Plaintiff was 35 years old, 5'4" tall,

14   weighed  190 pounds, and she was living in a shelter, with two of her three

15   children, ages 8 and 2.  Tr. 59.  Plaintiff graduated from high school and completed

16   two years of college.  Tr. 60.

17        Plaintiff's worked as a caregiver, but she said she stopped working in 2009

18   because of chronic migraines.  Tr. 61.  Plaintiff also worked at fast food

19   restaurants, and as a telephone solicitor.  Tr. 68; 71.

20        Plaintiff said she has migraines every day that last "[a]ll day long."  Tr. 61.

21   Plaintiff estimated that 20 days per month, her migraines are 10 out of 10 on the

22   pain scale.  Tr. 62.  She said hydrocodone helped alleviate the migraines.  Tr. 62.

23   Plaintiff also testified that she has pain in her lower back, neck and hip, and once a

24   month she develops a rash all over her hands, hips, and feet.  Tr. 63-64.

25        In her adult disability report, Plaintiff indicated that she gets up in the

26   morning, cares for the children and drives them to school.  Upon her return, she

27   lies down for much of the day, and sometimes performs household chores.  Tr.

28   221.  She grocery shops once a month for about an hour at a time.  Tr. 223.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment

1  prevents him from engaging in his previous occupation.  20 C.F.R. §§

2  404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the

3  ALJ proceeds to step five, and the burden shifts to the Commissioner to show that

4  (1) the claimant can make an adjustment to other work; and (2) specific jobs exist

5  in the national economy that claimant can perform.  *Batson v. Commissioner of*

6  *Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an

7  adjustment to other work in the national economy, a finding of "disabled" is made.

8  20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

### ALJ'S FINDINGS

10  At step one of the sequential evaluation process, the ALJ found Plaintiff has

11  not engaged in substantial gainful activity since April 30, 2009, the alleged onset

12  date.  Tr. 17.  At step two, the ALJ found Plaintiff suffered from the severe

13  impairments of

> [F]ibromyalgia versus chronic pain; headaches; obesity; mood
> disorder versus major depressive disorder; generalized anxiety
> disorder; personality disorder with passive aggressive features; and
> polysubstance abuse of alcohol, marijuana and prescription drugs.

18  Tr. 17.

19  At step three, the ALJ found Plaintiff's impairments, alone or in

20  combination, do not meet or medically equal the severity of one of the listed

21  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

22  416.920(d), 416.925 and 416.926).   Tr. 18.  The ALJ found Plaintiff has the

23  residual functional capacity to perform sedentary work.  Tr. 20.  She is also limited

24  to occasional public interaction, minimal coworker interaction, working

25  independently with infrequent supervision, and she needs additional time to adapt

26  to changes in the work setting/routine.  Tr. 20.  At step four, the ALJ found that

27  Plaintiff is unable to perform any past relevant work.  Tr. 29.  At step five, the ALJ

28  found that considering Plaintiff's age, education, work experience and residual

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   functional capacity, jobs exist in significant numbers that Plaintiff can perform,

2   such as stuffer, surveillance system monitor and cashier II.  Tr. 30.  As a result, the

3   ALJ concluded that Plaintiff has not been disabled within the meaning of the

4   Social Security Act at any time from the date the application was filed through the

5   date of the decision.  Tr. 31.

**ISSUES**

7       Plaintiff contends that the ALJ erred by (1) failing to find lupus was a severe

8   impairment at step two; (2) finding Plaintiff was not credible; and (3) improperly

9   weighing the medical evidence.

10  **A.      Step Two**

11      Plaintiff contends that the ALJ erred by failing to find that lupus was a

12  severe impairment.  ECF No. 14 at 11.

13      The ALJ noted that the record contained the mention of "lupus" but as Dr.

14  Coleman, observed that only one test was positive, and all other tests were

15  negative.  Tr. 18.  As a result, the ALJ concluded that insufficient evidence existed

16  to diagnose lupus, and even if the diagnosis was made, the symptoms were

17  extremely mild and thus did not qualify as a severe impairment.  Tr. 18.

18      The step two inquiry is a *de minimis* screening device to dispose of

19  groundless or frivolous claims.  *Bowe*, 482 U.S. at 153-154.  To establish a severe

20  impairment at step two, Plaintiff must provide evidence of a medically

21  determinable impairment which can be shown to be the cause of his or her alleged

22  symptoms.  20 C.F.R. §§ 404.1529, 416.929.  In claims that lack medical signs or

23  laboratory findings that substantiate the existence of a medically determinable

24  physical or mental impairment, the claimant "must be found not disabled at step 2

25  of the sequential evaluation process."  SSR 96-4p.

26      Under these standards, Plaintiff may only establish an impairment if the

27  record includes signs -- the results of "medically acceptable clinical diagnostic

28  techniques," such as tests -- as well as symptoms, i.e., Plaintiff's representations

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

regarding her impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  Moreover, an impairment is deemed "not severe" when the evidence establishes the impairment imposes, at most, a "slight abnormality" on an individual's ability to work.  *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988).  Finally, a diagnosis may be made only by an acceptable medical source.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996) (medical diagnoses are beyond the competence of other source witnesses); S.S.R. 06-03p ("other sources" cannot establish the existence of a medically determinable impairment); 20 C.F.R. §§ 404.1513(d), 416.913(d).

In this case Plaintiff argued, without citation to the record, that lupus "was confirmed by examination by her treating physicians and objective testing."  ECF No. 14 at 11.  However, the record lacks a lupus diagnosis by an acceptable medical source.  On February 9, 2012, Debra Gore, M.D., included lupus as a diagnosis, but the record contains no evidence of testing that established that diagnosis.  Tr. 572.

On April 24, 2012, Tabitha Wynecoop, LPN, examined Plaintiff.  Tr. 662-67.  Ms. Wynecoop observed that Plaintiff's rash on her hands seemed to be resolved and noted, "she has had positive SSA and SSB antibodies and dry eyes and dry mouth and may have an undifferentiated connective tissue disease."  Tr. 662.  On August 27, 2012, Ms. Wynecoop again examined Plaintiff and noted Plaintiff's rash had migrated from Plaintiff's hands to her thighs, and Plaintiff had sores in her mouth.  Tr. 668. Ms. Wynecoop's notes comment on the lack of definitive diagnosis:

> I spoke with Dr. Reed today who thinks the rash is consisted with erythema multiforme.  Dr. Reed would like to see her and find out what triggers this.
>
> …

2.  +ANA and +SSA and SSB antibodies – it is possible her rash is due to an underlying [connective tissue] disease.  She has had dry eyes and mouth at times in the past and it is possible she could have mild Sjogren's Syndrome.  It is not typical to get rashes like this.  Lupus can have rashes with blisters and mouth sores.

Tr. 668.

At the administrative hearing, Alan J. Coleman, M.D., testified that "the evidence that she has lupus is extremely weak.  She did have one blood test … which is a test for Lupus, but it's not diagnostic."  Tr. 46.  Dr. Coleman added Plaintiff's results from diagnostic tests for lupus were negative.  Tr. 46.  Finally, Dr. Coleman stated that if Plaintiff did in fact have lupus, it was "very, very, very mild."  Tr. 47.

Plaintiff failed to provide evidence from an acceptable medical source that definitively diagnosed her with lupus.  Moreover, even if the evidence supported the existence of lupus, the evidence reveals symptoms were extremely mild and thus did not arise to a medically determinable impairment.  Thus, the ALJ did not err in determining that lupus was not a severe medical impairment at step two.

**B.     Credibility**

Plaintiff argues that the ALJ erred by finding her not credible.  ECF No. 14 at 12-13.

The ALJ is responsible for determining credibility.  *Andrews*, 53 F.3d at 1039.  Absent affirmative evidence that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996).   The ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*,

81 F.3d at 834.  If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989)*; *Bunnell*, 947 F.2d at 346-47.

The ALJ's findings related to Plaintiff's credibility are scattered within the opinion.  Tr. 21-23.  Plaintiff challenges several findings and each are addressed separately.  First, Plaintiff argues fibromyalgia is characterized by intermittent and diffuse symptoms, and the ALJ improperly used these facts to discount Plaintiff's credibility.  ECF No. 14 at 12.  The ALJ summarized Plaintiff's doctor visits related to her pain complaints. Tr. 21-22.  The ALJ observed that the "primary care record consists significantly of just medication refills or visits either unrelated to her fibromyalgia pains or without mention of any specific pain symptoms." Tr. 22.  The ALJ concluded, "Overall, although the claimant alleges an extreme amount and frequency of body pain secondary to fibromyalgia and chronic pain, the treatment record has shown relatively diffuse and intermittent complaints." Tr. 22.

The Social Security Administration issued a ruling, effective July 25, 2012, to assist factfinders in the evaluation of fibromyalgia. Social Security Ruling ("SSR") 12-2p. The Ruling provides that once a person is determined to have fibromyalgia her statements about symptoms and functional limitations are to be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

1    evaluated according to the two-step process set forth in SSR 96-7p.  These policies

2    provide that "[i]f objective medical evidence does not substantiate the person's

3    statements about the intensity, persistence, and functionally limiting effects of

4    symptoms, we consider all other evidence in the case record."  SSR 12-2P.

5         In this case, Plaintiff testified that she was in extreme pain.  Tr. 62-66.  Yet

6    the record reveals Plaintiff only occasionally sought medical treatment for her

7    alleged extreme pain.  Notwithstanding the unpredictable nature of fibromyalgia,

8    the ALJ properly found that Plaintiff's allegations of extreme pain are undermined

9    by her failure to seek treatment.

10        Second, Plaintiff argues that the ALJ's finding that Plaintiff failed to comply

11   with recommended medication and treatment for her migraine headaches was

12   erroneous.  ECF No. 14 at 13.  Plaintiff's argument is not entirely clear, and the

13   argument lacks citation to authority or the record.  It appears Plaintiff's complaint

14   is that the record contradicts the ALJ's finding.

15        The ALJ found that Plaintiff had not been "entirely compliant with overall

16   treatment modalities."  Tr. 22.  As the ALJ found, in June, 2009, Plaintiff asked

17   Dr. Gores to certify she was disabled, but Dr. Gore noted that Plaintiff was not

18   making an effort to improve her symptoms and twice stated that Plaintiff was

19   capable of working.  Tr. 22; 363.  Also, as the ALJ found, when Plaintiff takes

20   hydrocodone, her headaches improve.  Tr. 22; 363.

21        In determining credibility, the ALJ properly relies upon unexplained or

22   inadequately explained failures to seek treatment or to follow prescribed treatment.

23   *Fair, 885 F.2d at 602-04.*  "Impairments that can be controlled effectively with

24   medication are not disabling for the purpose of determining eligibility for SSI

25   benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

26   2006) (impairments that are effectively controlled by medication are not deemed

27   disabling).  The record supports the ALJ's findings that Plaintiff failed to regularly

28   seek treatment and comply with treatment recommendations.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1    Third, Plaintiff argues, without citation to the record or authority, that the

2  ALJ erred by relying upon the differential diagnosis of possible malingering and/or

3  substance abuse to find that she lacked credibility.  ECF No. 14 at 13.  Plaintiff's

4  argument simply stated, "A rule-out diagnosis is merely an indication that a

5  definitive determination of the differential diagnosis cannot be made with existing

6  data."  ECF No. 14 at 13.  The ALJ noted that Jay Toews, Ed.D., examined

7  Plaintiff and noted Plaintiff advocated vague psychiatric symptoms, no evidence of

8  significant pain and "marginal cooperation in a possible attempt at malingering."

9  Tr. 26.  The ALJ also noted "Dr. Toews diagnosed claimant with symptom

10  magnification; rule out malingering of cognitive, memory, affective, and mood

11  problems; alcohol abuse in self-reported full remission; and rule out prescription

12  medication abuse."  Tr. 26.

13    The record supports the ALJ's recitation of Dr. Toews' diagnoses.  Dr.

14  Toews administered the SIMS test, and Plaintiff's score was 34.  Dr. Toews

15  explained that a score of 14 or more are "highly suggestive of deliberate attempts

16  to distort, deceive, or feign a wide range of cognitive, affective, memory and/or

17  psychopathological problems."  Tr. 464.  Moreover, Dr. Toews related that

18  Plaintiff "scored above the cutoff level on all seven categories, suggesting attempts

19  to misrepresent problems is fairly wide spread."  Tr. 464.  Dr. Toews observed that

20  Plaintiff's "motivation, effort and interest in testing appeared poor."  Tr. 465.  Dr.

21  Toews concluded that "it does not appear Plaintiff has cognitive, mood or affective

22  barriers to employability."  Tr. 465.

23    Plaintiff's characterization of this issue ignores the fact that Dr. Toews' first

24  diagnosis is "symptom magnification."  Tr. 465.  Even if an ALJ should not rely

25  upon a differential or a rule-out diagnosis, and Plaintiff has not so established, the

26  ALJ properly relied upon Dr. Toews' diagnosis of symptom magnification in

27  finding Plaintiff had little credibility.

28    Finally, Plaintiff argues that the ALJ erred by relying upon Plaintiff's daily

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1  activities to find that she was not credible.  ECF No. 14 at 13.  Plaintiff's argument

2  is limited to asserting that Plaintiff "rested between childcare chores."  ECF No. 14

3  at 14.  Notwithstanding Plaintiff's rest periods, the ALJ's findings that Plaintiff's

4  daily activities contradict her alleged severe level of impairment are supported by

5  the record.  For example, Plaintiff is the sole caregiver for a teenager and two

6  young children.  Tr. 27; 59.  Plaintiff asserted she can plan and prepare meals,

7  perform light housework including laundry and shop independently.  Tr. 27; 223.

8  The ALJ's findings that Plaintiff's daily activities contradict her allegations of

9  disabling pain are supported by the record.  The ALJ did not err in finding Plaintiff

10 had little credibility.

11 **C.    Medical Opinions**

12      Plaintiff contends that the ALJ erred by giving little weight to the opinions

13 from Kent Layton, Psy.D., and John Arnold, Ph.D.  ECF No. 14 at 14-15.

14      **1.    Kent B. Layton, Psy.D.**

15      Plaintiff argues that the ALJ erred by giving little weight to Dr. Layton's

16 opinion on the basis that the doctor ignored evidence of Plaintiff's malingering.

17 ECF No. 14 at 14.

18      Dr. Layton was a reviewing physician who testified at the hearing.  Tr. 51-

19 58.  The ALJ gave "some weight" to Dr. Layton's opinion that Plaintiff required

20 additional time to adapt to changes in the workplace, and she was limited to

21 minimal interactions with coworkers, infrequent supervision and occasional

22 contact with the general public.  Tr. 28.  The ALJ added "However, Dr. Layton

23 completely discounted the mention of 'malingering,' within the record, made by an

24 examining source, when reaching his opinions."  Tr. 28.  Presumably, the ALJ

25 factored this omission when determining the weight to give Dr. Layton's opinion.

26      The opinion of an examining physician is entitled to greater weight than the

27 opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th

28 Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  The ALJ properly

1    gave the opinion from examining Dr. Toews more weight than the opinion of

2    reviewing Dr. Layton.  Moreover, Dr. Layton's opinions about Plaintiff's

3    limitations were incorporated into Plaintiff's RFC, including occasional public

4    interaction, minimal coworker interaction and independent work with infrequent

5    supervision, and the allowance for additional time to adapt to changes in the work

6    setting or routine.  Tr. 20.   In light of the fact the ALJ incorporated Dr. Layton's

7    assessments of Plaintiff's non-exertional limitations into her RFC, Plaintiff failed

8    to establish error.

9              **2.    John Arnold, Ph.D.**

10            Plaintiff contends that the ALJ erred by giving little weight to the opinion of

11   John Arnold, Ph.D., on the basis that his diagnosis of PTSD was not supported by a

12   recitation of the DSM-IV criteria and his diagnosis of borderline intellectual

13   functioning was not supported by testing.  ECF No. 14 at 15.  Plaintiff argues that

14   Dr. Arnold was not required to recite to the DSM-IV criteria for PTSD, and she

15   argues that the diagnosis was supported by the clinical interview, "MMPI, MCMI-

16   III, review of records and mental status exam."  ECF No. 14 at 15.

17            On October 31, 2012, Dr. Arnold administered several objective tests.  He

18   reported that the MMPI-2RF profile was invalid, due to "extremely elevated F-r/Fs

19   scales," and her MCMI-III was interpretable, but "somewhat embellished."  Tr.

20   680.  Dr. Arnold observed "the validity of her assessment results appear to be

21   influenced by a tendency to over emphasize her medical and psychological

22   conditions."  Tr. 681.  Dr. Arnold stated that Plaintiff's profile "suggested"

23   depression, PTSD and a somatoform disorder.  Tr. 681.

24            The ALJ discounted Dr. Arnold's diagnosis of PTSD, because this was the

25   only instance in the record of that particular diagnosis.  Tr. 18.  Also, the ALJ

26   concluded that insufficient evidence existed to support the diagnoses, because Dr.

27   Arnold failed to set forth in his evaluation a description of the necessary criteria

28   and symptoms required for making the diagnosis under the DSM-IV-TR.  Tr. 18.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1    The ALJ cited several other reasons for giving little weight to Dr. Arnold's

2    diagnoses.

3        Notwithstanding the ALJ's inartful wording, it appears that the ALJ rejected

4    the diagnosis of PTSD because the record failed to provide or cite medical

5    evidence – i.e., signs, symptoms and laboratory findings – supporting a diagnosis

6    of PTSD.  See DSM-IV-TR 309.81 (PTSD is characterized by persistent symptoms

7    of: "hyper-vigilance," "exaggerated startle response," "difficulty concentrating,"

8    "[d]iminished responsiveness," "persistent symptoms of anxiety," and "markedly

9    reduced ability to feel emotions").   In order to establish the existence of a

10   medically determinable physical or mental impairment, a claimant must provide

11   medical evidence consisting of signs, symptoms, and laboratory findings.   SSR

12   96-4p.  The existence of an impairment may not be established on the basis of

13   symptoms alone.  SSR 96-4p; see also 20 C.F.R. §§ 404.1508, 416.908. Symptoms

14   are "an individual's own perception or description of the impact of his or her

15   physical or mental impairment(s)."  SSR 96-4p.  By contrast, a medical 'sign' is an

16   anatomical, physiological, or psychological abnormality that can be shown by

17   medically acceptable clinical diagnostic techniques."  SSR 96-4p; see also 20

18   C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

19       In this case, Dr. Arnold noted that Plaintiff declared that she had been

20   diagnosed with PTSD.  Tr. 680.  Dr. Arnold also stated, "her profile also suggests

21   PTSD"  Tr. 681.  However, Dr. Arnold fails to provide explanation or identify

22   facts that support the diagnosis.  An ALJ may discredit physicians' opinions that

23   are conclusory, brief, and unsupported by the record as a whole, or by objective

24   medical findings. *Batson*, 359 F.3d at 1195.

25       It is doubtful that the ALJ would find PTSD a viable diagnosis only if Dr.

26   Arnold "recited" the criteria and symptoms as Plaintiff suggests.  But in this case,

27   Dr. Arnold failed to note *any* of the criteria or symptoms as being presented by

28   Plaintiff.  In the absence of correlating symptoms, signs and laboratory findings,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1   the ALJ properly gave little weight to the diagnosis of PTSD.

2                                    **CONCLUSION**

3          Having reviewed the record and the ALJ's conclusions, this court finds that

4   the ALJ's decision is supported by substantial evidence and free of legal error.

5   Accordingly,

6          **IT IS ORDERED**:

7          1.  Defendant's Motion for Summary Judgment, **ECF No. 15,** is

8   **GRANTED**.

9          2.  Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **DENIED**.

10         **IT IS SO ORDERED**.  The District Court Executive is directed to file this

11  Order, provide copies to the parties, enter judgment in favor of Defendant, and

12  **CLOSE** this file.

13         DATED January 8, 2015.

14

15                        _____

16                              JOHN T. RODGERS
                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14